## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**REGINALD HALL**

    Plaintiff,

v.

**BRANDSAFWAY INDUSTRIES, LLC; CL COATINGS, LLC,**

    Defendants.

**Civil Action File No.**:

JURY TRIAL DEMANDED

## COMPLAINT

**COMES NOW** Reginald Hall ("Plaintiff" or "Hall"), by and through his undersigned counsel, to file this Complaint and Jury Demand against BrandSafway Industries, LLC ("BrandSafway) and CL Coatings, LLC ("CL Coatings") (collectively "Defendants") based on the following:

## INTRODUCTION

1.  Plaintiff is an African American who was employed by the Defendants.

1

2.    Plaintiff brings this civil action to recover damages against Defendants under Title VII of the Civil Rights Act of 1964, as amended, 2000e *et. seq.*, ("Title VII") and 42 U.S.C.A. Section 1981 ("Section 1981") for discrimination based on a racially hostile work environment; for unlawful termination by the Defendants based on his race and as retaliation for opposing racially discriminatory practices. Plaintiff further brings a claim for damages for negligent retention and supervision under O.C.G.A. Section 34-7-20.

## PARTIES

3.    Plaintiff Hall is a citizen of the United States and resident of the state of Florida who during the time of the events alleged in this Complaint worked for Defendants as a blaster painter at Defendants' job site located at King's Bay Naval Submarine Base in St. Mary's, Georgia.

4.    BrandSafway is a foreign limited liability company registered with the Georgia Secretary of State to conduct business in the State of Georgia and upon information and belief it is headquartered in Kennesaw, Georgia. CL Coatings is a foreign limited liability company also registered with the Georgia Secretary of State to conduct business in the State of Georgia. Moreover, CL Coatings

2

maintains a principal office located in the Northern District of Georgia at 1325 Cobb International Drive, Kennesaw, Georgia 30152.

5.     Upon information and belief, BrandSafway is a general contractor who during the events alleged in this complaint was hired to provide services at the King's Bay Naval Submarine Base. Upon information and belief, CL Coatings is a sub-contractor for BrandSafway. Upon information and belief, BrandSafway is a parent company of CL Coatings, its subsidiary,

6.     BrandSafway and CL Coatings functioned as joint employers, as they shared and jointly determined matters related to the terms, conditions, and privileges of the Plaintiff's employment.

## SUBJECT MATTER JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction concerning this civil action pursuant to 28 U.S.C. §§1331 and 1343.

8.    Pursuant to 28 U.S.C.A. § 1391 (b) (1), 42 U.S.CA. § 2000e-5(f)(3), and Local Rule 3.1 (B) (1) (a) of the Northern District of Georgia, venue is proper because one or both Defendants both reside in and maintain a principal office address within the Northern District of Georgia.

3

## **PERSONAL JURISDICTION**

9.    Defendant BrandSafway may be served with process concerning this civil action through its registered agent for service of process, C T Corporation System. Defendant CL Coatings may be served with process concerning this civil action through its registered agent for service of process, C T Corporation System.

## **ADMINISTRATIVE PROCEEDINGS**

10.    Hall filed Charges of Discrimination against BrandSafway and CL Coatings with the EEOC on March 31, 2020. *See* Exhibit No. 1.

11.    On September 28, 2020 the EEOC issued Hall Right to Sue letters for EEOC Charge Numbers 410-2020-05154 (against BrandSafway) and 410-2020-05026 (against CL Coatings). *See* Exhibits No. 2 and 3.

12.    Hall has timely filed this action within 90 days of receiving his Right to Sue Letters.

13.    Administrative prerequisites have been met prior to filing this civil action.

## **FACTUAL ALLEGATIONS**

4

14.     BrandSafway provides construction, maintenance, and repair services to numerous commercial and public sector industries. BrandSafway has acquired or owns a network of entities, including CL Coatings, that perform work and provide labor for its various industrial clients. CL Coatings has described itself in marketing material as a BrandSafway company and BrandSafway retains ultimate control over various aspects of CL Coatings. In the subsequent paragraphs of this complaint, BrandSafway and LC Coatings are collectively referenced as the "Defendants."

15.     Reginald Hall was hired by Defendants in November 2019 as a blaster painter at the King's Bay Naval Submarine Base in St. Mary's, Georgia. That means that Hall helped prepare large surfaces for paint jobs through a process called blasting. Hall's specific assignment involved submarine housing and loading dock structures at King's Bay.

16.     When Hall joined the King's Bay project, his work crew at the facility was almost entirely made up of whites. Out of dozens of employees on Hall's team, less than a handful were African American; so that when Hall and another

black employee were hired on the same day, they effectively doubled the African American share of the workforce on Hall's team.

17.     Beginning with the earliest days of his employment at the King's Bay site, Hall was subjected to ongoing racist language and behavior from some of Defendants' employees. The few black employees, instead of being treated as valued team members, were marginalized as well as demeaned on a near daily basis.

18.     One perpetrator of this offensive conduct was an individual who upon information and belief is named Scott Lee. Lee is a white male who had direct supervisory authority over Hall in the role as "lead man" on Hall's team. Lee controlled Hall's assignments and the division of responsibilities between Hall and his co-workers. Upon information and belief, Lee exercised other supervisory duties on behalf of Defendants at the King's Bay job site and functioned as a central member of the onsite leadership team.

19.     Lee made racially charged comments directly to Hall and other black employees, including remarks that Lee's ancestors owned slaves and a running commentary around insulting racial stereotypes. Lee sometimes referred to black

employees as "boy", a term Hall and other African American men find racially offensive. Hall felt embarrassed and belittled by Lee's inappropriate and repeated racial remarks, which were observed by Hall's colleagues.

20.    Lee, who had been accustomed to a nearly all white work crew, made statements suggesting that he had problems with black employees being part of his team. On one occasion, Lee observed to a black employee that "the job worked a lot better when you boys weren't here", an apparent reference to the presence of the new black employees.

21.    Hall faced discriminatory conduct that went beyond belittling remarks from the "lead man" on his team. Approximately a week after Hall and another black man started working on the job site, Hall saw a black stick figure cut-out with a noose tied around its neck openly displayed in the trailer where he and other employees signed into work every day.  A noose is universally recognized as one of the most provocative and threatening symbols of violence against African Americans. This noose was not displayed until Hall and a black colleague were hired to work at the job site.

22.     Soon after the noose episode, Hall saw a deeply offensive epithet that racists often invoke (what is referred to as the "N" word") scrolled on the wall in a portable toilet on site.

23.     One of Hall's white co-workers made a certain physical gesture toward him that Hall understood has come to be associated with the idea of "white power." *See* "When the OK Sign is No Longer OK", *New York Times*, December 15, 2019. Hall's co-worker made this gesture of intimidation toward Hall on multiple occasions during Hall's employment with the company.

24.     Hall experienced a disparity in the nature of the work he and the other blacks were assigned, in comparison with their white colleagues on the job site. Hall observed that the black employees were consistently ordered to do some of the most high-risk work available, such as paint blasting from scaffolding at elevated positions, while whites were not given these potentially dangerous projects. Hall noticed that the black employees on the job site were routinely directed to do more onerous and physically difficult work than the whites and were subjected to longer hours.

25.     Hall was distressed, embarrassed, and demeaned by the behavior described above. Hall felt Lee's distribution of assignments put him at physical

risk and Hall felt threatened by the presence of a black stick figure with a noose around its neck as well as by his co-worker's willingness to flout his bigotry with offensive gestures associated with "white power."

26.    After approximately three weeks of the appalling behavior described above, on or about December 9, 2019, Hall reported to representatives of Defendants, including site supervisor Duane Betner, a white male, that he was facing discriminatory conditions including harassment and mistreatment.

27.    In December 2019, Hall was jointly interviewed by corporate representatives of Defendants regarding his complaint. At one point, Hall raised the question of whether he should obtain a lawyer and was promptly told that the companies very much wanted the matter handled internally.

28.    While Hall was given assurances that his complaints were being taken seriously, little changed. Hall continued to face offensive language and behavior from his colleagues. Lee's racially offensive comments persisted, as did the "white power" hand gestures from Hall's co-worker. The unfair pattern of work assignments between black employees including Hall and their white counterparts stayed the same. The fact that these conditions continued unchecked after he made

an official complaint contributed to Hall's belief that his work site at King's Bay was discriminatory and hostile for him as an African American.

29.     The month after Hall reported that he was experiencing discriminatory behavior, and a mere two months after he was hired, Hall was abruptly terminated in January 2020.

30.     Just prior to his termination, Hall had come down with a significant respiratory infection that required him to miss work for several days in January 2020. Hall was told by a company safety official, Lesley Raymond, that his absence was not a problem and that he should return to work when he was better.

31.     Hall had no reason to believe that his job status was in jeopardy. His absence had just been directly excused by a company representative and he had a doctor's note confirming his illness. Yet, when he let his supervisor, Duane Betner, know that he was able to return, Betner responded that Hall had already been replaced on the job site and was no longer an employee.

32.     When Hall informed Betner that his absence was excused leave, Betner ignored him. Betner was one of the company officials to whom Hall had reported his harassment a month earlier.

10

## COUNT I

### (Racially Hostile Work Environment in Violation of Title VII, 42 U.S.C. § 2000e et. seq.)

33.     Hall incorporates by reference all preceding paragraphs of this complaint.

34.     Hall experienced racial harassment in his workplace that he found to be severe and pervasive enough to alter the terms of his employment and create a discriminatorily abusive working environment.

35.     The work environment encountered by Hall would be considered by any reasonable person in the same position to be hostile and discriminatorily abusive.

36.     Defendants' actions in creating, fostering, or tolerating a racially hostile work environment violated Title VII.

37.     Defendants were notified by Hall of the discriminatory hostile environment in its workplace.

38.     Despite having actual notice of the racial harassment, Defendants did not take steps to end the conduct, therefore tolerating a racially hostile work environment in violation of Title VII.

39.     Defendants willfully wantonly or recklessly disregarded Hall's rights under Title VII and Defendant's discriminatory actions were done in bad faith.

40.     As a result of a racially hostile work environment, Hall suffered lost compensation and other benefits of employment. Hall also suffered emotional distress, humiliation, embarrassment, and mental anguish as a result of this environment.

41.     Pursuant to Title VII, Defendants are jointly and severally liable to Hall for damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation.

## COUNT II

**(Retaliation in Violation of Title VII, 42 U.S.C. § 2000e *et. seq.*)**

42.   Hall incorporates by reference all preceding paragraphs of this complaint.

43.   Hall engaged in activity protected under Title VII by opposing racially discriminatory conduct through an internal complaint on or about December 9, 2019, to Defendants concerning a racially hostile work environment at Hall's job site.

44.   On or about January 27, 2020, Hall was informed that he was terminated from employment by Defendants.

45.   Defendants' termination of Hall's employment was retaliation for engaging in protected activity under Title VII.

46.   Defendants willfully wantonly or recklessly disregarded Hall's rights under Title VII and Defendants' retaliatory actions were done in bad faith.

47.   As a result of Defendants' retaliation, Hall suffered lost compensation and other benefits of employment, emotional distress, humiliation, embarrassment, and mental anguish.

48.    Pursuant to Title VII, Defendants are jointly and severally liable to Hall for damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation.

## **COUNT III**

(**Discriminatory Termination in Violation of Title VII, 42 U.S.C. 2000e** *et. seq.*)

49.    Hall incorporates by reference all preceding paragraphs of this complaint.

50.    Hall's work site had been almost all white before he was hired, and his direct supervisor openly regretted the fact that more African American employees had been hired.

51.    Hall was terminated for pretextual reasons meant, to conceal the fact that Hall's termination was caused by his race.

52.    Defendants' termination of Hall was racially motivated in violation of Title VII.

53.     Defendants willfully wantonly or recklessly disregarded Hall's rights under Title VII and Defendants' discriminatory actions were done in bad faith.

54.     As a result of his unlawful termination, Hall suffered lost compensation and other benefits of employment, emotional distress, humiliation, embarrassment, and mental anguish.

55.     Pursuant to Title VII, Defendants are jointly and severally liable to Hall for damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation.

## COUNT IV

(**Racially Hostile Work Environment in Violation of 42 U.S.CA. Section 1981**)

56.     Hall incorporates by reference the preceding paragraphs in this complaint.

57.     Hall experienced racial harassment in his workplace that he found to be severe and pervasive enough to alter the terms of his employment and create a discriminatorily abusive working environment.

58.     The work environment encountered by Hall would be considered by any reasonable person in the same position to be hostile and discriminatorily abusive.

59.     Defendants' actions in creating, fostering, or tolerating a racially hostile work environment violated Section 1981.

60.      Defendants were notified by Hall of the discriminatory hostile environment in its workplace.

61.     Despite having actual notice of the racial harassment, Defendants did not take steps to end the conduct, therefore tolerating a racially hostile work environment in violation of Section 1981.

62.     Defendants willfully wantonly or recklessly disregarded Hall's rights under Section 1981 and the Defendants' discriminatory actions were done in bad faith.

63.     As a result of a racially hostile work environment, Hall suffered lost compensation and other benefits of employment. He also suffered emotional distress, humiliation, embarrassment, and mental anguish as a result of this environment.

64.     Pursuant to Section 1981, Defendants are jointly and severally liable to Hall for damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation.

## COUNT V

**(Discriminatory Termination in Violation of 42 U.S.C.A. Section 1981)**

65.     Hall incorporates by reference all preceding paragraphs of this complaint.

66.     Hall's work site had been almost all white before he was hired, and his direct supervisor openly regretted the fact that more African American employees had been hired.

67.     Hall was terminated for pretextual reasons, meant to conceal the fact that Hall's termination was caused by his race.

68.     Defendants' racially discriminatory termination violated Section 1981.

69.     Defendants willfully wantonly or recklessly violated Hall's rights under Section 1981 and Defendants' discriminatory actions were done in bad faith.

70.     As a result of his racially discriminatory termination, Hall suffered lost compensation and other benefits of employment, emotional distress, humiliation, embarrassment, and mental anguish.

71.     Pursuant to Section 1981, Defendants are jointly and severally liable to Hall for damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation.

## COUNT VI

**(Retaliation in Violation of 42 U.S.C.A. Section 1981)**

72.     Hall incorporates by reference all preceding paragraphs of this complaint.

73.     Hall engaged in activity protected under Section 1981 by opposing racially discriminatory conduct through an internal complaint on or about

December 9, 2019, to Defendants concerning a racially hostile work environment at Hall's job site.

74.   On or about January 27, 2020, Hall was informed that he was terminated from employment by Defendants.

75.   Defendants' termination of Hall's employment was retaliation for engaging in protected activity under Section 1981.

76.   Defendants willfully wantonly or recklessly violated Hall's rights under Section 1981 and Defendants' discriminatory actions were done in bad faith.

77.   As a result of Defendants' retaliation, Hall suffered lost compensation and other benefits of employment, emotional distress, humiliation, and embarrassment, and mental anguish.

78.   Pursuant to Section 1981, Defendants are jointly and severally liable to Hall for damages including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney fees and costs of litigation.

## COUNT VII

**(Negligent retention in violation of O.C.G.A. Section 34-7-20)**

79.    Hall incorporates by reference all preceding paragraphs of this complaint.

80.    After being directly informed of Scott Lee's mistreatment of African American employee, Defendants kept Lee in the role of leadman on their job site at King's Bay Naval Submarine Base.

81.    Despite their knowledge of offensive conduct by Scott Lee, Defendants made no meaningful effort to supervise or direct his management of their King's Bay job site in a manner to prevent more wrongful conduct.

82.    As a result of Defendants' negligent retention of Scott Lee, a leadman on the King's Bay job site, Hall continued to suffer emotional distress, embarrassment, humiliation, and mental anguish because of Lee's extreme and outrageous conduct directed toward him on a nearly daily basis. Lee's conduct toward Hall was an intentional infliction of emotional distress.

83.     Defendants are in violation of O.C.G.A. Section 34-7-20 and Defendants are jointly and severally liable to Hall for his damages under the laws of the State of Georgia.

84.      Defendants acted in a manner which showed willful misconduct, malice, wantonness, oppression or an entire lack of care concerning the rights of Hall and its retention of Lee.

## JURY TRIAL DEMAND

85.     Hall demands a trial by jury as to all claims stated in this complaint.

## PRAYER FOR RELIEF

**WHEREFORE** based on the above stated claims that Defendants BrandSafway and CL Coatings have violated Plaintiff Hall's rights afforded to him under Title VII of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e et. seq., 42 U.S.C. §1981, and O.C.G.A. Section 34-7-20, Hall respectfully requests that this Court enter judgment in his favor and against BrandSafway and CL Coatings, and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to compensation for emotional distress, embarrassment, humiliation, and mental anguish;

B. Back pay and lost benefits;

C. Front pay;

D. Punitive damages;

E. Attorneys' fees and costs of this action;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of December, 2020.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: s/ *Jermaine A. Walker*

Jermaine "Jay" A. Walker
HKM Employment Attorneys LLP
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
(telephone) 404-301-4020
(fax: same #) 404-301-4020
jwalker@hkm.com
**Attorney for Plaintiff**